IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CYRESE L.**,[1]

        Plaintiff,

   v.

**KILOLO KIJAKAZI**, Acting
Commissioner of Social Security,

        Defendant.

Case No. 6:20-cv-2095-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Katie Taylor, WELLS, MANNING, EITENMILLER & TAYLOR PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Michael J. Mullen, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Cyrese L. (Plaintiff) brings this appeal challenging the decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* When the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray,* 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff filed her applications for DIB and SSI in March 2018, alleging disability beginning September 22, 2017. (AR 245-56.) Plaintiff's claims were denied initially and upon

PAGE 2 – OPINION AND ORDER

reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ). (AR 172-85.) After an administrative hearing, ALJ B. Hobbs issued a written opinion denying Plaintiff's claims. (AR 50-74, 75-115.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1-6.) This appeal followed.

### B.     The Sequential Analysis

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari,* 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

PAGE 3 – OPINION AND ORDER

### C.     The ALJ's DECISION

The ALJ applied the five-step sequential evaluation process to determine whether Plaintiff was disabled. (AR 50-74.) As an initial step for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirement through December 31, 2022. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 22, 2017. (AR 55.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: traumatic brain injury (TBI)/post-concussion syndrome; depression; anxiety; somatic symptom disorder; posttraumatic stress disorder (PTSD); headaches; and right shoulder impingement syndrome. (AR 56.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a Listing. (AR 56.) The ALJ then assessed Plaintiff's residual functional capacity (RFC), finding that Plaintiff retained the ability to perform light work with the following limitations:

> [Plaintiff] should never climb ladders, ropes, or scaffolds. [Plaintiff] is also limited to occasional overhead reaching with the right upper extremity. Due to [Plaintiff's] mental impairments, she is limited to applying common sense understanding to carry out short and simple written or oral instructions, consistent with a level 2 reasoning that can be learned in 30 days or less. Additionally, [Plaintiff] should have no more than frequent interactive contact with the public, co-workers, or supervisors.

AR 58.

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (AR 65.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (AR 66.) The ALJ therefore concluded that Plaintiff was not disabled from the alleged onset date through January 15, 2020, the date of the ALJ's decision. (AR 67.)

PAGE 4 – OPINION AND ORDER

## **DISCUSSION**

Plaintiff argues that the ALJ erred by (A) improperly evaluating the medical opinion evidence; (B) improperly rejecting Plaintiff's subjective symptom testimony; and (C) rejecting the lay witness testimony.

### A.  MEDICAL OPINION EVIDENCE

Plaintiff first argues that the ALJ improperly evaluated the opinions of Andrew Wong, Ph.D., Carolee Horning, QMHP, and Indra Dissanayake, QMHP. An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*. at 1012-13 (citing *Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996)).

#### 1.  **Indra Dissanayake, QMHP**

Ms. Dissanayake first evaluated Plaintiff in May 2018 and saw her biweekly from February 2019 through the November 2019 decision date. (AR 871, 1899.) Ms. Dissanayake opined the Plaintiff had marked to extreme limitations in all areas of work-related mental functioning. (AR 1903.)

The ALJ rejected Ms. Dissanayake's opinion as unpersuasive. (AR 64-65.) First, the ALJ found that Ms. Dissanayake's opinion was contradicted by evidence of Plaintiff's activities of daily living. (*Id.*) The ALJ is required to consider the supportability of a medical opinion given the longitudinal record. 20 C.F.R. §§ 404.1520(c)(1), 416.920(c)(1). Here, the ALJ discussed Plaintiff's ability to perform activities such as clean houses for Air B&B, drive her son to school, attend appointments, complete household chores, volunteer at her son's school, and attend online courses. As Plaintiff testified, however, she was only able to clean for Air B&B for about two hours at a time. (AR 88-89.) Further, Plaintiff testified that she received assistance from her adult daughter to complete household chores. (AR 284-85.) Plaintiff's other activities, such as volunteering, and attending online courses, are self-paced and were noted by Plaintiff to take significant effort and supports, such as frequent reminders from alarms and calendars to keep appointments. On this record, Plaintiff's daily activities are consistent with marked limitations in mental functioning assessed by Ms. Dissanayake and do not form a reasonable basis for the ALJ's rejection of her opinion. 20 C.F.R. §§ 404.1520(c)(1), 416.920(c)(1).

The ALJ next found Ms. Dissanayake's opinion to be internally inconsistent. (AR 65.) An ALJ may discount part of a medical opinion when it is inconsistent with the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ noted that while Ms. Dissanayake opined that Plaintiff was markedly limited in making judgments on simple work-related decisions, Ms. Dissanayake also concluded that Plaintiff would be capable of managing any benefits in her own best interest. (AR 65, 1903, 1905.) Because the judgment exercised in managing one's benefits is reasonably related to making judgments on work-related decisions, the ALJ was entitled to reject part of Ms. Dissanayake's opinion. *Tommasetti*, 533 F.3d at 1041. The ALJ did not, however, provide legally sufficient reasons to reject Ms. Dissanayake's opinion in its

PAGE 6 – OPINION AND ORDER

entirety; for this reason, the ALJ's rejection of Ms. Dissanayake's other limitations on Plaintiff's mental functioning was error. *Garrison*, 759 F.3d at 1012.

### 2. Carolee Horning, QMHP

Ms. Horning began treating Plaintiff for PTSD approximately four months before rendering an opinion as to Plaintiff's symptoms and limitations. (AR 1648-55.) Ms. Horning opined that Plaintiff had moderate, marked, and extreme limitations in all areas of mental functioning. (AR 1652-53, 1655.) The ALJ discounted Ms. Horning's findings because they were inconsistent with Plaintiff's activities. (AR 63-65.) As discussed above, however, the limited, assisted, and self-paced nature of Plaintiff's activities is not inconsistent with an assessment of marked mental limitations. On this record, the ALJ's assessment of Ms. Horning's opinion was not supported by substantial evidence. *Woods*, 32 F.4th at 787.

### 3. Andrew Wong, Ph.D.

Dr. Wong created a neuropsychological report that assessed Plaintiff's mental functioning, symptoms, and limitations. (AR 478-84, 495-501.) The ALJ did not provide reasons for rejecting Dr. Wong's report because he found that it did not constitute a medical opinion under the Commissioner's regulations. (AR 63.)

The Commissioner's regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions …" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Here, Dr. Wong is a medical source and his opinion describes Plaintiff's abilities with respect to maintaining attention and organizing tasks. (AR 483-484.) Specifically, Dr. Wong's report describes Plaintiff's needs for frequent, structured breaks and offers suggestions for Plaintiff to complete tasks by eliminating distractions and focusing on "only one activity at a time." (AR 484.) On this record, Dr. Wong's report offers a medical opinion within the regulations and the ALJ was

PAGE 7 – OPINION AND ORDER

required to evaluate it as such. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The ALJ's rejection of Dr. Wong's opinion without legal explanation was therefore error. *Nguyen*, 100 F.3d at 1464.

    **B.**    **SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff next argues that the ALJ improperly rejected her subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). At the administrative hearing, Plaintiff testified that she was completely disabled following an accident in August 2017 when a metal pole attached to a punching bag struck her on the head, causing a TBI. (AR 94.) Plaintiff reported that following the accident, she was disorganized and easily confused, and experienced dizziness, nausea, instability, double vision, headaches, and diminished motor skills. (AR 284.) Plaintiff also testified that her mental health worsened after her TBI, and that she was unable to care for her son for the first year after her injury. (AR 96-97, 101.) Plaintiff alleged that she was unable to work primarily due to headaches and mental limitations. (AR 59-60.)

The ALJ rejected Plaintiff's testimony to the extent that it conflicted with the RFC. (AR 59.) The ALJ determined that Plaintiff's testimony regarding her TBI-related limitations was undermined by the fact that her symptoms improved over time, and that there were "gaps" in Plaintiff's mental health treatment record. (AR 60-61, 719.) A claimant's course of treatment is a valid consideration for assessing the persuasiveness of a claimant's testimony. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). Here, the ALJ noted that Plaintiff reported that she was "gradually getting better" after her TBI thanks to physical therapy and speech therapy; and that she generally reported "doing well." (*Id*.) The medical evidence of record, however, shows that Plaintiff continued to suffer from severe cognitive issues, headaches, PTSD, and depression throughout the relevant period. (*See, e.g.*, AR 594-98, 607-10, 627, 729-30, 762, 1026.)

PAGE 8 – OPINION AND ORDER

The treatment note referenced by the ALJ that Plaintiff's therapies were "helping tremendously" also states that Plaintiff continued to experience blurry vision, nausea, and dizziness. (AR 719.) Similarly, the treatment note documenting an improvement in Plaintiff's headaches also states that she continued to experience blurry vision, and that her headaches and dizziness worsened with activity, increased input, communication, and problem solving. (AR 697, 700, 703, 707.) Similarly, when Plaintiff reported that she was "doing well" overall with respect to her mental health problems, she also noted that she continued to have problems with impaired executive functioning. (AR 1025.) On this record, Plaintiff's alleged treatment gaps and improvement do not constitute substantial evidence supporting the ALJ's determination. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

The ALJ also found that Plaintiff's activities suggested she was more capable than alleged in her testimony. (AR 59-61, 63.) A ALJ may find a claimant's testimony unpersuasive when the claimant's daily activities conflict with her alleged level of impairment. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021.) Here, the ALJ noted that Plaintiff was able to work "odd jobs" during the relevant period, including housecleaning, dog-sitting, and yard work. (AR 1030.) Plaintiff was also able to drive her son to school, volunteer at her son's school by grading papers, take online courses, and generally perform activities of daily living. (AR 61, 971, 1018, 1457, 1747, 1751.) In all, the ALJ pointed to activities that can be performed intermittently and at short intervals, consistent with Plaintiff's allegations that she easily becomes dizzy and loses her ability to focus. Plaintiff's activities thus do not constitute a legally sufficient reason for rejecting her testimony as unpersuasive.[2] *Ahearn*, 988 F.3d 1111, 1117.

---

[2] The ALJ also concluded that Plaintiff's testimony was unpersuasive because Plaintiff sought and received very limited shoulder treatment. (AR 60.) Yet Plaintiff's primary reasons for seeking disability were her symptoms and limitations from TBI and associated mental health

PAGE 9 – OPINION AND ORDER

The ALJ next found that Plaintiff's subjective complaints were unpersuasive because they were inconsistent with the medical record. (AR 59-63.) The ALJ may consider objective medical evidence when assessing a claimant's testimony and may discount a claimant's statements if medical opinion evidence "contradicts" the claimant's subjective testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, the ALJ cited evidence that Plaintiff's brain imaging was unremarkable and that reported being able to "self-regulate and stay grounded when triggered." (AR 63, 449, 1023.) The ALJ also noted a provider's remark that Plaintiff "has been able to navigate a complicated system to schedule all these visits," and that Plaintiff very rarely missed her appointments. (AR 1019, 1762.) This evidence, however, does not contradict Plaintiff's allegations that she is frequently triggered and that she requires a lot of help and reminders to attend her appointments. (AR 102-05, 1018.) The ALJ therefore failed to cite medical evidence that reasonably contradicts Plaintiff's subjective symptom testimony. *Carmickle*, 533 F.3d at 1161.

At best, the ALJ's reasoning is that the objective medical evidence does not fully support all of Plaintiff's claimed limitations, but that reason, alone, does not support discounting a claimant's subjective testimony. *See Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (stating that an ALJ may not "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence") (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995))); *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective

---

issues. For this reason, Plaintiff's shoulder treatment record is inapposite to the evaluation of Plaintiff's testimony regarding her inability to perform work at a substantial gainful level.

PAGE 10 – OPINION AND ORDER

medical evidence does not substantiate your statements"). Because the Court finds that the ALJ erred in his evaluation of the medical evidence and in his evaluation of Plaintiff's testimony, it need not reach Plaintiff's further arguments.

### C. REMAND

Because the court finds that the ALJ committed harmful error in his evaluation of Plaintiff's testimony and of the medical evidence, remand is appropriate. "Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Here, although the ALJ erred in considering the challenged medical opinions, the record has been fully developed. There also are no conflicts or ambiguities for the ALJ to resolve on remand. The ALJ did not discount the challenged medical opinions because they were in conflict with other medical opinions. Additionally, as explained above, the ALJ failed to provide legally

PAGE 11 – OPINION AND ORDER

sufficient reasons supported by substantial evidence for rejecting Plaintiff's testimony and the medical opinions of Dr. Wong, Ms. Horning, and Ms. Dissanayake. *See Pulliam v. Berryhill*, 728 F. App'x 694, 697 (9th Cir. 2018) (citing *Garrison*, 759 F.3d at 1020). Given the substantial functional limitations in the improperly discredited opinion evidence, if this evidence were credited as true, the ALJ would be required to find Plaintiff disabled. As discussed above, Plaintiff described extreme functional difficulties that are supported by the opinions of Ms. Horning and Ms. Dissanayake. These limitations would preclude Plaintiff from performing substantial gainful activity. For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits.

## CONCLUSION

For the reasons stated, the Commissioner's decision is **REVERSED and REMANDED** for the immediate payment of benefits.

**IT IS SO ORDERED**.

DATED this 30th day of August, 2022.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 12 – OPINION AND ORDER